**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DARRIN G. SWEENEY, | ) | CASE NO. 1:09CV2377 |
| | ) | |
| Petitioner, | ) | JUDGE ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| RICHARD GANSHEIMER, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Darrin G. Sweeney ("Sweeney") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254 on October 14, 2009. Sweeney is in the

custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal

entry of sentence in the case of *State of Ohio v. Sweeney*, Case No. 05-CR-000875

(Lake County 2006). For the reasons set forth below, Sweeney's petition should be

denied.

I.

The state appellate court reviewing Sweeney's conviction found the following

facts to be relevant to his case:

{¶ 2} On October 23, 2005, the Fairport Harbor Police Department received a
phone call from a confidential informant reporting suspected drug activity taking
place at the apartment of her friend, Carole Kidd. The confidential informant later

came into the police station for an interview, which lasted two hours, and made a written statement to police.  Based upon the information provided by the confidential informant, police began conducting surveillance of Kidd's apartment, located at 224 Seventh Street.

{¶ 3} Officer Michael Wilson, who was among the officers conducting surveillance on Kidd's residence in the ensuing days, testified that police were watching for evidence of "short-term traffic," meaning that people arrive at a particular residence and leave shortly thereafter.  This behavior is consistent with drug trafficking.  Officer Wilson testified that during one forty-five minute period in which he was conducting surveillance on Kidd's residence, he observed three people enter and leave the residence.

{¶ 4} Based upon this and other information and observations, the Fairport Harbor Police conducted a "trash pull" from 224 Seventh Street.  A "trash pull" is an investigatory method through which police arrange with a sanitation company to send an empty truck on the regular day trash is collected to retrieve trash from a single building or residence and deliver it directly to police.

{¶ 5} Lieutenant Christopher J. Cichon isolated three bags from the trash pull from Kidd's apartment.  These bags contained empty boxes of Chore Boy copper scouring pads; burnt pieces of Chore Boy, which were in cylindrical shapes; an assortment of empty cigarette lighters; plastic baggies with the corners torn off, remnants of the corners of plastic bags, some of which appeared to have been tied and then ripped open; and a corner of a plastic bag which contained two white rocks of a substance which later tested positive as having a cocaine base.

{¶ 6} Based upon this information, the Fairport Harbor Police received a warrant to search Kidd's apartment for evidence of drug manufacturing and/or abuse.  The affidavit submitted to obtain the warrant averred that Chore Boys are commonly used as filters in crack pipes and that using the corners of plastic bags is a common method of packaging crack cocaine for sale.

{¶ 7} On October 27, 2005, at approximately 5:00 p.m., Fairport Harbor Police, accompanied by members of the Lake County Narcotics Agency (LCNA) executed the search of Kidd's residence.  During the search, the police apprehended Sweeney, Kidd, James Evans, and Brooke Blewitt.  When searching Sweeney's pockets, police recovered $1,470 in cash and two cell phones.  Police also recovered a key ring with keys for a Dodge Durango, another Dodge product, and a key which was later found to be an override key for a safe.  There is some dispute over whether the keys were recovered from Sweeney's pockets or the apartment itself.

{¶ 8} During their search of the kitchen, police found two glass beakers, two glass measuring cups, and a plastic measuring cup containing a white residue, which

later tested positive for cocaine.  Police also recovered a box of syringes and a box of sandwich bags.

{¶ 9} In the living room, police recovered crack cocaine, a bag of marijuana, various smoking pipes, and burnt Chore Boys.

{¶ 10} In the bedroom, police found a pill bottle with rocks of crack cocaine in a dresser.  Underneath the dresser, police found a digital scale with cocaine residue on it.  On the floor of the bedroom, police recovered a copy of a book entitled "Cocaine Handbook," and a duffle bag containing men's clothing.

{¶ 11} In the bedroom closet, police recovered a safe.  Using the key obtained from their search of Sweeney, police were able to open it.  Inside the safe was a loaded .38 caliber revolver inside a "gun rug," a box of .38 caliber ammunition, and a plastic grocery bag containing numerous plastic baggies, variously filled with powder cocaine, weighing 294.34 grams and crack cocaine, weighing 118.33 grams.  Sergeant Bradley Kemp of the LCNA estimated the street value of the cocaine recovered from the safe at approximately $40,000.

{¶ 12} Ownership of the handgun was traced to Dan Wysocki, from whom it had been stolen by David Shermer.  Shermer testified that he had traded the gun to Kidd for some crack.  Shermer also testified that he knew Sweeney through Kidd and that he had previously purchased crack from both Sweeney and Kidd.

{¶ 13} On March 17, 2006, the Lake County Grand Jury returned a seven count indictment against Sweeney as follows: Trafficking in Cocaine (Count One), a felony of the first degree in violation of R.C. 2925.03(A)(2), with a Major Drug Offender specification pursuant to R.C. 2941.1410; Possession of Cocaine (Count Two), a felony of the first degree in violation of R.C. 2925.11, with a Major Drug Offender Specification pursuant to R.C. 2941.1410; Trafficking in Cocaine (Count Three), a felony of the second degree in violation of R.C. 2925.03(A)(2); Possession of Cocaine (Count Four), a felony of the second degree in violation of R.C. 2925.11; Illegal Manufacturing of Drugs (Count Five), a felony of the second degree in violation of R.C. 2925.04; Possession of Criminal Tools (Count Six), a felony of the fifth degree in violation of R.C. 2923.24, and Having Weapons While Under Disability, a felony of the third degree, in violation of R.C. 2923.13(A)(3).

{¶ 14} Prior to trial, Count Seven was severed and ordered to be tried separately.  On October 17, 2006, a jury trial commenced on the remaining six charges.  On October 26, 2006, the jury returned its verdict, finding Sweeney guilty as charged on all counts.

*State v. Sweeney*, No. 2006-L-252, 2007 WL 2822742, at *1-2 (Ohio App. Sept. 28,

2007).  For the purpose of sentencing, the court merged count two (possession of crack cocaine) with count one (trafficking in crack cocaine), and merged count four (possession of cocaine) with count three (trafficking in cocaine).  The trial court sentenced Sweeney to a mandatory ten year term of imprisonment for count one, a mandatory four year term for count three (served consecutively to count one), a mandatory four year term for count five (served concurrently with counts one and three), and twelve months for count six (served concurrently with counts one, three, and five). The trial court imposed an additional four years on count one for a major drug offender specification, for a total of eighteen years.

Sweeney timely appealed his conviction and sentence.  Sweeney raised four assignments of error in his appeal:

First Assignment of Error:  The trial court erred when it denied defendant-appellant's motion for acquittal under Criminal Rule 29(A).

Second Assignment of Error:  The jury verdict was against the manifest weight of evidence in violation of defendant-appellant's right to due process of law.

Third Assignment of Error:  The trial court erred in allowing the irrelevant and prejudicial testimony of witness David Shermer in violation of defendant-appellant's right to a fair trial.  Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution, Sections 5 and 16 of Article 1 of the Ohio Constitution, and Ohio Rules of Evidence 401, 402, 403 and 404.

Fourth Assignment of Error:  The trial court erred by instructing the jury on a complicity charge despite defendant-appellant's objection in violation of defendant-appellant's rights to due process and fair trial as guaranteed by the Fifth and Fourteenth amendments to the U.S. Constitution and Sections 10 and 16, Article 1 of the Ohio Constitution.  (All uppercase in original)

On September 28, 2007, the state appellate court affirmed the trial court.

Sweeney, represented by counsel, timely appealed the appellate court's decision to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Sweeney

-4-

asserted four propositions of law:

> Proposition of Law No. I:  The evidence supporting defendant's conviction was insufficient to prove guilt beyond a reasonable doubt in violation of the Due Process Clause of the Fourteenth Amendment and Criminal Rule 29.

> Proposition of Law No. II:  The jury verdict was against the manifest weight of evidence in violation of the Fourteenth Amendment's Due Process Clause.

> Proposition of Law No. III:  The testimony of David Shermer was irrelevant and so prejudicial that the testimony deprived defendant of fundamental fairness, had a substantial influence on the jury's verdict, violated due process and the right to a fair trial under the Fourteenth Amendment; the testimony was also irrelevant under Ohio Rules of Evidence 401, 403 and 404(B).

> Proposition of Law No. IV:  The jury instruction on complicity was error that had a substantial influence upon the jury, and so infected the entire trial that the resulting conviction violated the Due Process Clause and fair trial requirements of the Fourteenth Amendment.

On February 20, 2008, the Ohio Supreme Court declined jurisdiction and dismissed the appeal as not involving any substantial constitutional question.

On December 27, 2007, Sweeney filed in the state appellate court an application to reopen his direct appeal based on a claim of ineffective assistance of appellate counsel pursuant to Ohio App.R. 26(B) ("R. 26(B)").  In his application, Sweeney raised two assignments of error:

> Assignment of Error No. I:  Appellate counsel was ineffective under the Sixth and Fourteenth Amendments by not arguing on appeal that defendant's sentence as a major drug offender violated his Sixth and Fourteenth Amendment right to a jury trial, his right to due process under the Fourteenth Amendment, and his right to be free from *ex post facto* laws under Article I, Section 10 of the United States Constitution.

> Assignment of Error No. II:  Appellate counsel was ineffective under the Sixth and Fourteenth Amendments by not arguing on appeal that defendant's consecutive sentence of 4 years on Count 3 violated his Sixth and Fourteenth Amendment right to a jury trial, his right to due process under the Fourteenth Amendment, and his right to be free from *ex post facto* laws under Article 1, Section 10 of the United States Constitution.

On February 11, 2008, the application for reopening was denied.  The state appellate court found that Sweeney could not demonstrate a reasonable probability of success on the merits of his claims.

On June 5, 2008, Sweeney filed in the state appellate court a motion to vacate the journal entry of February 11, 2008, which denied reopening, because the clerk did not provide service of the entry on the defendant's attorney.  On July 3, 2008, the motion to vacate was granted.  On July 8, 2008, the court re-entered the judgment denying reopening.

On July 17, 2008, Sweeney filed in the Eleventh District Court of Appeals a motion to certify a conflict with the Second District Court of Appeals:

> Pursuant to *State v. Foster*, 109 Ohio St. 3d 1 (2006), has R.C. 2929.14(D)(3)(b) been severed in its entirety, based on *Apprendi*, *Blakely*, and *ex post facto* grounds, thereby precluding a trial court from imposing an additional sentence upon a person found by the trial court to be a major drug offender?  Alternatively, has the court's decision in *Foster* severed only the violative portion of R.C. 2929.14(D)(3)(b) that required the trial judge to engage in judicial fact-finding before imposing an add-on sentence?

On August 13, 2008, the Eleventh District Court of Appeals denied the motion because its earlier judgment (finding that Sweeney's appellate counsel was not ineffective) was not in conflict with the judgment of the Second District Court of Appeals in *State v. Sanchez*, No. 06-CA-154, 2007 WL 4373013 (Ohio App. Dec. 14, 2007) (finding that the major drug offender specification was severed in its entirety).

On July 31, 2008, Sweeney timely appealed to the Ohio Supreme Court the appellate court's denial of his motion to reopen pursuant to R. 26(B).  In his memorandum in support of jurisdiction, Sweeney asserted two propositions of law:

> Proposition of Law No. I:  Where a defendant has been convicted of drug

offenses, and the trial judge sentences the defendant to the mandatory maximum sentence of 10 years, and then imposes an additional 4 years as a major drug offender pursuant to R.C. 2929.14(3)(b) without a jury finding, appellate counsel is ineffective under the Sixth and Fourteenth Amendments by not arguing that the defendant's sentence as a major drug offender violated his Sixth and Fourteenth Amendment rights to a jury trial, his right to due process under the Fourteenth Amendment, and his right to be free from *ex post facto* laws under Article I, Section 10 of the United States Constitution.

Proposition of Law No. II: Where a defendant has been sentenced consecutively without any findings by a jury supporting the imposition of the consecutive sentence, appellate counsel was ineffective under the Sixth and Fourteenth Amendments by not arguing that the sentencing procedure violated the appellant's right to a jury trial, his right to due process, and his right to be free from *ex post facto* laws under Article I, Section 10 of the United States Constitution.

On October 15, 2008, the Ohio Supreme Court dismissed Sweeney's appeal as not involving any substantial constitutional question.

On October 14, 2009, Sweeney filed, *pro se*, in this court a petition for a federal writ of habeas corpus. The respondent summarized the grounds asserted by Sweeney in respondent's answer/return of writ,[1] as follows:

Ground One: The evidence supporting defendant's conviction was insufficient to prove guilt beyond a reasonable doubt in violation of the Due Process Clause of the Fourteenth Amendment and Crim.R. 29(A).

Ground Two: The jury verdict was against the manifest weight of the evidence in violation of the Fourteenth Amendment's Due Process Clause.

Ground Three: The testimony of David Shermer was irrelevant and so prejudicial that the testimony deprived defendant of fundamental fairness, had a substantial influence on the jury's verdict, violated due process and the right to a fair trial under the Fourteenth Amendment, the testimony was also irrelevant under the Ohio Rules of Evidence 401, 403, 404(B).

Ground Four: The jury instruction on complicity was error that had a substantial influence upon the jury, and so infected the entire trial that the resulting

---

[1] Sweeney confirms the accuracy of that summary in his traverse.

-7-

conviction violated the Due Process Clause and fair trial requirements of the Fourteenth Amendment.

Ground Five:  Where a defendant has been convicted of drug offenses, and the trial judge sentences the defendant to the mandatory maximum sentence of 10 years, and then imposes an additional 4 years as a major drug offender pursuant to R.C. 2929.14(3)(b) without a jury finding, appellate counsel is ineffective under the Sixth and Fourteenth Amendments by not arguing that the defendant's sentence as a major drug offender violated his Sixth and Fourteenth Amendment rights to a jury trial, his right to due process under the Fourteenth Amendment, and his right to be free from *ex post facto* laws under Article I, Section 10 of the Ohio and United States Constitution.

Respondent filed his Answer/Return of Writ on February 8, 2010.  (Doc. No. 6.)

Sweeney filed his Traverse on May 10, 2010.  (Doc. No. 9.)  Thus, the petition is ready

for decision.

II.

*A.  Jurisdiction*

*1.  Geographic*

Sweeney is in the custody of the Lake Erie Correctional Institution in Lake

County, Ohio.  Sweeney filed his writ of habeas corpus in the Northern District of Ohio

and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. §

2254:

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . .  Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a)&(d).  Lake County is within this court's geographic jurisdiction.

-8-

This court has jurisdiction over Sweeney's claims.

    *2.  Subject Matter*

District courts are also limited in their subject matter jurisdiction. Title 28 U.S.C. § 2254(a) provides in relevant part that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  The writ is available "when the petitioner is in custody . . . and the detention is related to a claimed constitutional violation."  *Kirby v. Dutton*, 794 F.2d 245, 256 (6th Cir. 1986).  Sweeney's second ground for relief, that the jury verdict was against the manifest weight of the evidence in violation of the Fourteenth Amendment's Due Process Clause, is distinct from the federal constitutional claim of insufficient evidence and is beyond the subject matter jurisdiction of this court.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983), *cert. denied*, 464 U.S. 962 (1983).   The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert.*

*denied*, 455 U.S. 1028 (1982).  A conviction based upon evidence insufficient to convince a rational trier of fact of the essential elements of the crime beyond a reasonable doubt may serve as grounds for habeas relief.

A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction was based on insufficient evidence:

> With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."  Black's Law Dictionary (6 Ed.1990) 1433.  See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction).  In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra,* 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"  (Emphasis added.)  Black's, *supra,* at 1594.

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial

should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 386-87, 678 N.E.2d 541, 546-47 (1997).  *See also Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v. Virginia*, 443 U.S. at 318-19.

A federal court reviewing a petition for a writ of habeas corpus has no authority to re-weigh the credibility of witnesses at trial.  *Marshall v. Lonberger*, 459 U.S. 422 (1983).  It is incapable, therefore, of determining whether a conviction was against the manifest weight of the evidence.  It may only determine whether a conviction was based on *sufficient* evidence.  Sweeney's claim that his conviction was against the manifest weight of the evidence, therefore, is not cognizable in federal habeas corpus.

Usually, this court would regard the state appellate court's ruling that Sweeney's conviction was not against the manifest weight of the evidence as implicitly finding that there was sufficient evidence to support Sweeney's conviction, as the standard for manifest weight is higher than the standard for sufficiency.  This court would then examine the merits of Sweeney's "manifest weight" claim as a "sufficiency" claim.  In this case, however, Sweeney has explicitly asserted a "sufficiency" claim.  The court should examine the merits of that claim, therefore, and dismiss Sweeney's "manifest weight" claim as not cognizable in a habeas proceeding.

*B. Evidentiary Hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings or when the state proceedings were seriously defective or

-11-

inadequately recorded.  *See* 28 U.S.C. § 2254(d).  There is no need for an evidentiary hearing in the instant case.  All of petitioner's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.  *Exhaustion of State Remedies*

Prior to seeking review of conviction by federal habeas corpus, a state prisoner must exhaust all possible remedies in state court.  28 U.S.C. § 2254(b)&(c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  The prisoner must fairly present any claims to the state in a constitutional context.  *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  The exhaustion requirement is satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Sweeney has no state remedies available for his claims.  Because no state remedies remain available to him, Sweeney has satisfied the requirement of exhaustion.

D.  *Procedural Default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson*, 459 U.S. 4.  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . .  Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . .  Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims . . . .  [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. at 750.

*1. Ground Three*

Respondent contends that Sweeney has defaulted his third ground for relief, that irrelevant and prejudicial testimony violated his rights to due process and a fair trial under the Fourteenth Amendment.  According to respondent, Sweeney did not fairly

-13-

present these claims to the state appellate court as federal constitutional claims because Sweeney's legal theory was based solely on state law.  Sweeney denies respondent's contention.

Fair presentment of a claim in a federal constitutional context requires a petitioner to apprise the state courts that a claim is a federal claim, "not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner need not cite "book and verse on the federal constitution", *Picard*, 404 U.S. at 278, to apprise state courts that his claim is based on federal law:

> In determining whether a petitioner has fairly presented a federal constitutional claim to the state courts, a habeas court may consider whether (1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; (2) the petitioner relied upon federal cases employing the constitutional analysis in question; (3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or (4) the petitioner alleged facts well within the mainstream of the pertinent constitutional law.

*Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *see also Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 193-94 (2d Cir. 1982)).

A petitioner does not fairly present a federal claim to a state court merely by presenting the facts underlying his claim for relief, *Picard,* 404 U.S. at 277, or by making a general reference to a broad constitutional guarantee, such as "due process" or "the right to a fair trial," *Gray v. J.D. Nederland*, 518 U.S. 152, 163 (1996); *McMeans,* 228 F.3d at 681.  "To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-

-14-

constitutional arguments." *Blackmon*, 394 F.3d at 400.

The petitioner must present argument or citations to cases which identify the substance of the particular analysis upon which petitioner relies in asserting his federal constitutional claim.  *Gray*, 518 U.S. at 162-63.  A federal constitutional claim is not fairly presented when a petitioner fails to cite to federal case law identifying how the alleged errors constitute denials of "fair trial" or "due process" rights or identifying how petitioner's case mirrored cases in which such denials have been found.  Further, failure to develop any cogent arguments regarding denial of a "fair trial" or "due process" rights beyond the naked assertion that they were violated is insufficient for fair presentment. *Blackmon*, 394 F.3d at 400-01.

Sweeney presented his claim that irrelevant and prejudicial testimony violated his rights to due process and a fair trial in the state appellate court by arguing that a violation of state evidentiary rules at trial violated his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments.  Sweeney did not elaborate on his claim or cite any case law in support of his federal claim.  He mentioned the right to a fair trial but failed to develop a coherent legal theory explaining how the evidentiary violation was a federal constitutional violation.  The right to a fair trial is a broad and encompassing concept, and Sweeney failed to indicate exactly how this right was denied.

Sweeney did not apprise the state appellate court of the federal claim in a manner that provided an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard*, 404 U.S. at 275 (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  Consequently, Sweeney's third ground for relief should be dismissed as procedurally defaulted.

2. *Ground Four*

Respondent also contends that Sweeney has defaulted his fourth ground for relief, that the jury instruction on complicity was erroneous and so infected the entire trial that it violated his rights to due process and a fair trial under the Fourteenth Amendment. According to respondent, Sweeney did not fairly present the claims to the state appellate court as federal constitutional claims because Sweeney's legal theory was based solely on state law. Sweeney denies respondent's contention.

Sweeney argued in the state appellate court that the instruction given the jury regarding "complicity" was not permitted by state law and that this breach of state law violated his right to a fair trial under the Fifth and Fourteenth Amendments. Although Sweeney developed his argument that the instruction violated state law, he did not cite any case law in support of his federal claim or explain how the state law violation was also a constitutional violation. Sweeney failed to develop a coherent legal theory explaining how the jury instruction was a federal constitutional violation. A bare reference to due process, without further elaboration, does not fairly present a federal claim to a state court.

Sweeney did not apprise the state appellate court of the federal claim in a manner that provided an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard*, 404 U.S. at 275 (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). Consequently, Sweeney's fourth ground for relief should be dismissed as procedurally defaulted.

-16-

III.

*A.  Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

-17-

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Sweeney's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

*B.  Ground One:  Whether Sweeney was convicted upon insufficient evidence in violation of his rights under the Fourteenth Amendment*

Sweeney contends that his right to due process under the Fourteenth Amendment was violated because the evidence supporting his conviction was insufficient to prove guilt beyond a reasonable doubt.  Specifically, Sweeney argues that the state based its case on circumstantial evidence and inconclusive testimony.  Respondent answers that the evidence presented at trial was sufficient to allow a reasonable juror to find Sweeney guilty beyond a reasonable doubt.

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that after viewing the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime

-18-

beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. at 319; *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir. 1986). It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt.  *Holland v. United States,* 348 U.S. 121, 140 (1954).

> The role of the reviewing court in considering such a claim is limited:
>
> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

The state appellate court, while not presented with a federal claim of insufficient evidence, rejected Sweeney's similar state law claim:

> {¶ 39} In order to find that Sweeney had committed the crime of Trafficking in Cocaine, the State was required to provide evidence sufficient to prove beyond a reasonable doubt, that he "knowingly * * * [p]repare[d] for shipment, ship[ped], transport[ed], deliver[ed], prepare[d] for distribution, or distribute[d] a controlled substance," i.e. crack cocaine in excess of 100 grams as to the first degree Trafficking charge and cocaine (that is not crack cocaine) in excess of 100 grams but less than 500 grams as to the second degree Trafficking charge. R.C. 2925.03(A)(2), 2925.03(C)(4)(e), and 2925.03(C)(4)(g).
>
> {¶ 40} The State introduced the following evidence to demonstrate that Sweeney was guilty of Trafficking.  Dave Shermer testified that he purchased cocaine from

-19-

both Kidd and Sweeney, which is direct evidence that Sweeney was involved in the delivery and/or distribution of cocaine.

{¶ 41} With regard to circumstantial evidence, police found two cell phones and $1,470 in cash in Sweeney's pockets at the time of the arrest. In addition, police recovered 294.34 grams of powder cocaine and 118.33 grams of crack cocaine, in various packages, from a safe found in Kidd's house, which they were able to open using a safe override key found on a keychain which also held the keys for the vehicle Sweeney drove.

{¶ 42} Police also recovered from the apartment various glass and plastic beakers and measuring cups, a digital scale and a handbook which explained, among other things, how to process powdered cocaine into crack cocaine. Sweeney's fingerprints were the only conclusive fingerprint evidence found on the handbook and the box for the scale.

{¶ 43} Sergeant Kemp testified, based on his experience in narcotics enforcement, that manufacturers/dealers often use the residences of drug users to conduct their trade in exchange for drugs. This testimony, along with evidence, in the form of a letter addressed to Sweeney and sent to Kidd's address, and the fact that police found a duffle bag containing Sweeney's clothing and personal effects in the bedroom where the drugs were found, is sufficient indirect, circumstantial, evidence from which a jury could reasonably infer that he was engaged in the distribution of cocaine and crack cocaine in excess of 100 grams.

{¶ 44} In order to find that Sweeney had committed the crime of Possession of Cocaine, the State was required to prove, beyond a reasonable doubt, that he "knowingly obtain[ed], possess[ed], or use[d] a controlled substance," i.e. crack cocaine in excess of 100 grams as to first degree Possession and cocaine (that is not crack cocaine) in excess of 100 grams but less than 500 grams as to second degree Possession. R.C. 2925.11(A), 2925.11(C)(4)(f) and 2925.11(C)(4)(d).

{¶ 45} The evidence discussed relative to Trafficking also supports Sweeney's convictions under the Possession counts. The key to the safe containing the cocaine was found on Sweeney's keychain. The cocaine handbook and the box for the scale contained his fingerprints. His personal effects were recovered in the room where the cocaine was found. This alone is sufficient to prove that Sweeney had possession of the drugs or aided and abetted another in their possession of the drugs.

{¶ 46} In order to find that Sweeney had committed the crime of Illegal Manufacture of Drugs, the State was required to prove, beyond a reasonable doubt, that Sweeney, "knowingly manufacture[d] or otherwise engage[d] in any

-20-

part of the production of a controlled substance," i.e. cocaine.  See R.C. 2925.04 and R.C. 3719.41 Schedule II(A)(4).

{¶ 47} The cocaine handbook and the scale, the beakers and measuring cups, as well as the large amount of both cocaine powder and crack cocaine packaged for distribution and found in the safe are all indicative of the manufacture of crack cocaine.  Sergeant Kemp provided testimony explaining the manufacturing process for crack cocaine, and indicated that the beakers and measuring cups "could easily be used" to turn powered cocaine into crack cocaine.  He also testified that the digital scale recovered by police was "ideal" for the purpose of weighing out small amounts of powdered cocaine for the purpose of either manufacturing or sale.  This evidence is sufficient to prove that Sweeney had engaged in the manufacture of the drugs or aided and abetted another in the manufacture of drugs.

{¶ 48} In order to find that Sweeney had committed the crime of Possession of Criminal Tools, the State was required to prove, beyond a reasonable doubt, that he, "possess[ed] or ha[d] under [his] control * * *, with purpose to use it criminally," a digital scale, cocaine handbook, safe and/or beakers.  R.C. 2923.24(A).

{¶ 49} As has been demonstrated above, the state offered ample evidence that the scale, handbook, safe, and beakers were used for the production and distribution of crack cocaine, and that Sweeney had either contact with or ready access to these items.  Accordingly, there is sufficient evidence to convict Sweeney of Possession of Criminal Tools.

{¶ 50} Sweeney argues the State has merely proved the presence of potentially incriminating items during his arrest, but has offered no direct evidence demonstrating that he knowingly participated in any of the crimes charged.  We disagree.  Not only is there direct evidence, in the form of Shermer's testimony, that Sweeney sold him crack cocaine, but it may reasonably be inferred, from the testimony, fingerprints, and other evidence that Sweeney directly engaged, or aided in, the manufacture and sale of crack cocaine.  It is well-settled that "[d]irect evidence, circumstantial evidence, or both may establish an element of the charged offense."  *State v. Griffin*, 1st Dist. No. C-020084, 2003-Ohio-3196, at ¶ 44, citing *State v. Durr* (1991), 58 Ohio St. 3d 86, 92, 568 N.E.2d 674.  Moreover, circumstantial and direct evidence are considered to be of equal probative value.  *State v. Heilman*, 11th Dist. Nos.2004-T-0133 and 2004-T-0135, 2006-Ohio-1680, at ¶ 26, citing *Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, at paragraph one of the syllabus.

*State v. Sweeney*, No. 2006-L-252, 2007 WL 2822742, at *4-6 (Ohio App. Sept. 28, 2007).

Sweeney's petition points to a lack of direct evidence, inconclusive or perhaps conflicting police testimony, and exculpatory testimony from Carole Kidd. However, the law does not prefer direct evidence over circumstantial evidence. *Spalla*, 788 F.2d at 402. Whether evidence is direct or circumstantial has no impact on the question of sufficiency. In addition, it is the responsibility of the jury to resolve any conflicts that may be presented in testimony. Re-assessing the credibility of the witnesses is typically beyond the scope of federal habeas review. *Matthews v. Abramajtys*, 319 F.3d at 788-89. Sweeney is challenging the quality, but not the sufficiency, of the evidence. *Martin v. Mitchell*, 280 F.3d at 618. This is not sufficient to ground an award of habeas relief.

Viewing the evidence in the light most favorable to the prosecution, the state presented sufficient evidence at trial to allow a reasonable juror to conclude that Sweeney was guilty beyond a reasonable doubt. Sweeney's first ground for relief, therefore, should be dismissed as being without merit.

*C. Ground Three: Whether the trial court improperly admitted David Shermer's testimony in violation of Sweeney's rights under the Fourteenth Amendment*

Although Sweeney has procedurally defaulted his third ground for relief, the court will examine the merits of this claim. Sweeney contends that his rights to due process and a fair trial under the Fourteenth Amendment were violated because the trial court erroneously admitted irrelevant testimony by David Shermer ("Shermer") that was so prejudicial as to deny Sweeney fundamental fairness. In particular, Sweeney argues that the admission of Shermer's testimony violated Ohio Evid.R. 404(B) ("R. 404(B)"), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may,

-22-

however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Sweeney claims that the testimony had no bearing on the alleged possession and manufacture of drugs and that this violation infected the entire trial. Therefore, according to Sweeney, the admission of Shermer's testimony violated R. 404(B) and his rights to due process and a fair trial. Respondent answers that the trial court properly admitted Shermer's testimony and no constitutional violation exists.

Federal courts generally do not grant habeas relief for alleged errors arising under state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764 (1990); see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. at 67-68. However, an error of state law may serve as a basis for habeas relief when the petitioner was denied fundamental fairness in the trial process. *Id.*; *see also Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). An error of state law so severe as to deny fundamental fairness offends the Due Process Clauses of the Fifth and Fourteenth Amendments. *See United States v. Agurs*, 427 U.S. 97, 107 (1976); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").

Trial court errors regarding the admissibility of evidence, in particular, are generally not cognizable as grounds for federal habeas relief. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984). Instead, questions concerning the admissibility of evidence, as well as its probative or prejudicial value, are properly left to the sound discretion of the trial

-23-

court.  *See Oliphant v. Koehler*, 594 F.2d 547, 555 (6th Cir. 1979).  Only where the admission of the disputed evidence rendered the trial "so fundamentally unfair as to constitute denial of federal rights" may it provide ground for granting a writ of habeas corpus.  *Clemmons*, 34 F.3d at 356.  *See also Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)*; Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001); *Coleman v. Walker*, 224 F.3d 552, 552 (6th Cir. 2000).  A federal court will not disturb a state court's admission of evidence of prior crimes, wrongs, or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies the defendant due process.  *See Hopkins v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir. 1989), *overruled on other grounds by Sawyer v. Smith*, 497 U.S. 227 (1990).

In reviewing Sweeney's direct appeal, the state appellate court upheld the admission of Shermer's testimony:

> {¶ 30} At trial, Shermer testified that he was a friend of Kidd's for a "couple of years," that he had helped Kidd move into the apartment, which according to Kidd's testimony, was in June of 2005, and that he had been to the Seventh Street apartment "eight or ten times" in the four months since Kidd had lived there.  He described their relationship as a "friends with benefits" situation, in which they would get together for some "partying [and] drinking."  "Partying," according to Shermer, included smoking crack occasionally with Kidd and sometimes other people.  Shermer testified that he would sometimes see Sweeney, whom he knew only as "Dee," at the house occasionally during this period, but that he did not know if he lived there.  Shermer stated that he usually purchased crack from Kidd, but had also purchased from Sweeney "maybe four" times while at the house, but that he did not consume any crack at the apartment when he purchased it.

> {¶ 31} At issue in this trial was whether Sweeney had any involvement or connection with the drugs found in Kidd's home, since he contends he was present that day only to assist Kidd in moving from her apartment.

> {¶ 32} As is evident from the foregoing testimony, Shermer's statements are highly probative in proving a course of Sweeney's conduct contemporaneous with and inextricably linked to the current charge.  The testimony tends to show

-24-

Sweeney's motive, opportunity, intent, preparation, plan, knowledge and identity. *Cf. State v. Martinez*, 3rd Dist. No. 9-02-57, 2003-Ohio-1821, at ¶ 20 (evidence of a defendant's sale of cocaine to a witness six months earlier "was probative of [defendant's] opportunity to possess drugs, his plan to sell drugs, his knowledge that he possessed drugs, and to show the absence of any accidental appearance of the drugs [found in his possession]").

{¶ 33} The "prior bad acts" rule, in contrast, is only meant to apply when "an accused has committed another crime wholly independent of the offense for which he is on trial." *Curry*, 43 Ohio St.2d at 68, 330 N.E.2d 720. (emphasis added).

{¶ 34} Since the alleged act could hardly be considered "wholly independent" of the current charge against Sweeney, the trial court did not err in allowing Shermer's testimony related to the purchase of crack cocaine from him.

*State v. Sweeney*, No. 2006-L-252, 2007 WL 2822742, at *2-3 (Ohio App. Sept. 28, 2007).  Evidence deemed properly admitted by the state court does not provide a basis for habeas relief.  *See Bey v. Bagley*, 500 F.3d 514, 520 (6th Cir. 2007) ("[T]he Ohio Supreme Court's decision that admission of this evidence was proper – combined with our ordinary inability to reconsider a state court's state-law-based decisions – would appear to defeat [the habeas] claim.").  Moreover, Shermer's testimony was highly probative.  Sweeney denied any involvement with the possession, trafficking, and manufacture of cocaine and crack cocaine at Kidd's house.  Shermer had close ties to Kidd and the activities at her house, and his testimony had a direct bearing on the charges against Sweeney.  Sweeney has not demonstrated a prejudicial effect outweighing the probative value.  Consequently, the admission of Shermer's testimony did not render the trial fundamentally unfair.

In addition, there is no Supreme Court holding factually indistinguishable from the instant case that would provide grounds for habeas relief.  The Sixth Circuit, in a similar

-25-

case, wrote as follows:

> [T]he admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent. There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell*, 329 F.3d 496, 512 (2003).  The trial court's decision to admit

Shermer's testimony was not contrary to a holding of the Supreme Court.  Therefore,

Sweeney's third ground for relief should be dismissed as being without merit.

*D.  Ground Four:  Whether the jury instruction was error so infecting the entire trial as to violate Sweeney's rights under the Fourteenth Amendment*

Sweeney contends that his rights to due process and a fair trial under the

Fourteenth Amendment were violated because the trial court's jury instruction on

complicity was erroneous and infected the entire trial.  Specifically, Sweeney argues

that because he was indicted as a principal, the jury instruction on complicity rendered

the trial unfair.  Respondent answers that the instruction was consistent with state law

and did not infect the whole trial so as to violate due process.

To warrant habeas relief, jury instructions must not only have been erroneous,

but also, taken as a whole, so infirm that they rendered the entire trial fundamentally

unfair.  *See Estelle v. McGuire*, 502 U.S. at 75.  The category of infractions that violate

fundamental fairness is exceedingly narrow, as the Due Process Clause has limited

application beyond the specific guarantees enumerated in the Bill of Rights.  *See id.* at

-26-

72.  An ambiguous, potentially erroneous instruction violates the Constitution only if there is a reasonable likelihood that the jury has applied the instruction improperly.  *See Coe v. Bell*, 161 F.3d 320, 329 (6th Cir.1998).  Allegations of "trial error" raised in challenges to jury instructions are reviewed for whether they had a substantial and injurious effect or influence on the verdict, and are subject to harmless-error analysis. *See Gilliam v. Mitchell*, 179 F.3d 990, 994-95 (6th Cir.1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)).  The petitioner must show that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. at 147.  *See also Estelle*, 502 U.S. at 72; *Baze v. Parker*, 371 F.3d 310, 327 (6th Cir. 2004).

The instruction to the jury regarding complicity was consistent with both federal and state standards.  *See Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986) ("[A] defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process."); *State v. Herring*, 94 Ohio St. 3d 246, 762 N.E.2d 940 (2002) ("R.C. 2923.03(F) adequately notifies defendants that the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense.").  Moreover, Sweeney has not demonstrated that he suffered any substantial or injurious effect from the instruction.  The instruction did not infect the entire trial and consequently did not render the proceeding fundamentally unfair.

In addition, there is no Supreme Court holding factually indistinguishable from the instant case that would provide grounds for habeas relief.  The Sixth Circuit denied a

-27-

claim for habeas relief in a similar case:

> Ohio statutory and case law put [the defendant] clearly on notice that, although charged as a principal, he could be convicted for complicity, conspiracy, or aiding and abetting.  The state court of appeals expressly held that the jury instructions were permissible in light of Ohio Rev.Code §§ 2923.01 and 2923.03(A)(3) and the evidence presented.  Both federal and state courts have issued decisions supporting the state court's holding.

*Anderson v. Coyle*, No. 98-3136, 1999 WL 98527, at *2 (6th Cir. Jan. 28, 1999).  The trial court's jury instruction on complicity was not contrary to a holding of the Supreme Court.  Therefore, Sweeney's fourth ground for relief should be dismissed as being without merit.

*E.  Ground Five: Whether Sweeney's appellate counsel rendered ineffective assistance*

Sweeney contends that his rights to assistance of counsel and due process under the Sixth and Fourteenth Amendments were violated because his appellate counsel was ineffective.  Specifically, Sweeney argues that appellate counsel was ineffective for failing to challenge the additional four year sentence imposed for the major drug offender specification.  Sweeney claims that the additional sentence violated his rights to due process, jury trial, and freedom from *ex post facto* laws under the Sixth and Fourteenth Amendments.  Respondent answers that Sweeney's fifth ground for relief is without merit because the underlying claims are without merit.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990),

-28-

*cert. denied*, 498 U.S. 1002 (1990).  The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance . . . .  When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the

-29-

challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at

689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130

F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness

of counsel's challenged conduct on the facts of the particular case, viewed as of the

time of counsel's conduct." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the

error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant
> setting aside the judgment of a criminal proceeding if the error had no effect on
> the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to
> ensure that a defendant has the assistance necessary to justify reliance on the
> outcome of the proceeding.  Accordingly, any deficiencies in counsel's
> performance must be prejudicial to the defense in order to constitute ineffective
> assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at

1168.  Further "the burden rests on the accused to demonstrate a constitutional

violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional

violation requires showing that "counsel's unprofessional errors so upset the adversarial

balance between defense and prosecution that the trial was rendered unfair and the

verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or

unfairness does not result if the ineffectiveness of counsel does not deprive the

defendant of any substantive or procedural right to which the law entitles him." *Lockhart*

*v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there

is a reasonable probability that, absent the errors, the factfinder would have had a

-30-

reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*,

130 F.3d at 1168.

The state appellate court denied Sweeney's claim of ineffective assistance of

appellate counsel, writing as follows:

> During the pendency of Sweeney's appeal, this court repeatedly had the opportunity to address identical due process arguments with regard to the Supreme Court's severance, pursuant to *Foster*, of Ohio's Sentencing Statutes. In all of these cases, we have rejected such arguments.  See *State v. Green*, 11th Dist. Nos. 2005-A-0069 and 2005-A-0070, 2006-Ohio-6695; *State v. Elswick*, 11th Dist. No. 2006-L-075, 2006-Ohio-7011; *State v. Spicuzza*, 11th Dist. No. 2006-L-141, 2007-Ohio-783; *State v. Asbury*, 11th Dist. No. 2006-L-097, 2007-Ohio-1073; *State v. Anderson*, 11th Dist. No. 2006-L-142, 2007-Ohio-1062.
>
> We held that "*Foster* did not contravene the federal constitutional guarantee of due process and prohibition against *ex post facto* laws, because the potential for a judicial declaration that certain portions of Ohio's sentencing statutes were unconstitutional was prefigured by the decision of the United States Supreme Court in [*Apprendi* and *Blakely*]."  *State v. Lewis*, 11th Dist. No. 2006-L-224, 2007-Ohio-3014, at ¶40.  We found this principle equally true within the context of the post-*Foster* severance remedy's impact on the Major Drug Offender specification.  See *State v. Adams*, 11th Dist. No. 2006-L-114, 2007-Ohio-2434, at ¶27 ("[O]nly the requirement to make factual finding before imposing the 'add-on' has been severed"); accord, *State v. Kidd*, 11th Dist. No. 2006-L-193, 2007-Ohio-4113, at ¶¶85-86; *State v. Garner*, 11th Dist. No. 2007-L-041, 2007-Ohio-5914, at ¶¶86-87.
>
> Under these circumstances, Sweeney cannot demonstrate there was a "reasonable probability of success" had his counsel raised this issue on appeal, thus, he has failed to raise a "genuine issue" as to whether he was deprived of the effective assistance of counsel under App.R. 26(B)(5).

*State of Ohio v. Sweeney*, No. 2006-L-252 (Ohio App. Feb. 11, 2008).

### 1.  Ineffective assistance of appellate counsel and Sweeney's rights to due process and jury trial

Sweeney contends that his appellate counsel provided ineffective assistance by

failing to challenge the constitutionality of the additional sentence imposed pursuant to

the major drug offender specification.  Sweeney argues that for the trial court to add a

sentence for the major drug offender specification, the court had to rely on

unconstitutional findings by the judge, thus depriving him of his rights to due process

and trial by jury.  Sweeney also asserts that the right to a jury trial includes the right to

be sentenced based solely on jury findings.  Sweeney errs.

In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court clarified a

rule first stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  *Apprendi* held that

"other than the fact of a prior conviction, any fact that increases the penalty for a crime

beyond the statutory maximum must be submitted to a jury and proved beyond a

reasonable doubt."  *Blakely*, 542 U.S. at 301.  *Blakely* defined *Apprendi's* "statutory

maximum" as "the maximum sentence a judge may impose *solely on the basis of the*

*facts reflected in the jury verdict or admitted by the defendant.*"  *Id.* at 303 (emphasis in

original).  The statutory maximum is not the maximum sentence allowed by statute after

the judge finds additional facts but the maximum the judge may impose without any

additional factual findings.  *Id.* at 303-04.

In *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), the Ohio Supreme

Court brought the Ohio sentencing statute into compliance with *Blakely*.  They severed

the portions of the statute that mandated judicial fact-finding in the sentencing process.

"All references to mandatory judicial fact-finding properly may be eliminated in the four

areas of concern."  *Id.*, 109 Ohio St. 3d at 29, 845 N.E.2d at 497.  Instead of mandatory

judicial fact-finding for certain sentences, judges now have full discretion to sentence

within the statutorily-provided ranges.  "Our remedy does not rewrite the statutes but

leaves courts with full discretion to impose a prison term within the basic ranges of R.C.

-32-

2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings that Blakely prohibits."  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 499.

Sweeney's jury verdict included the finding that he was in possession of more than 100 grams of both cocaine and crack cocaine.  As a result, the trial judge was at liberty to sentence within the statutorily-provided range for a major drug offender.  No further judicial finding of fact was required.  Sweeney's sentence is consistent with the Ohio sentencing statute, the *Foster* decision, and the Supreme Court's Sixth Amendment jurisprudence.  Sweeney incorrectly construes *Blakely* as requiring direct jury involvement in sentencing.  Instead, *Blakely* prohibited sentences that required further judicial fact-finding beyond those facts found by a jury.  Sweeney's additional sentence was imposed by the judge, but based on facts that were determined by the jury.  The imposition of the additional sentence for being a major drug offender was constitutional and did not violate Sweeney's right to a jury trial.[2]

*2.  Ineffective assistance of appellate counsel and a violation of the Ex Post Facto Clause*

Sweeney claims that his sentence, which was based on an Ohio Supreme Court

_____

[2]Sweeney also contends that the Eleventh District misapplied the decision in *Foster*, citing a Second District case that construes *Foster* as severing the major drug offender specification in its entirety.  *State v. Dillard*, 173 Ohio App. 3d 373, 394, 878 N.E.2d 694, 711 (2d. Dist. 2007).  However, this is inconsistent with a thorough reading of *Foster*.  After declaring that R.C. 2929.14(D)(3)(b) is excised, the Ohio Supreme Court states, "[a]fter the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications."  *Foster*, 109 Ohio St. 3d at 29-30, 845 N.E.2d at 498.  The clear implication of that statement is that a trial court may impose a major drug offender specification, but must do so in a manner consistent with the *Blakely* decision.

ruling issued after he committed his crime, violated the *Ex Post Facto* Clause.

According to Sweeney, he did not have fair warning about how the sentencing process

would proceed.  Respondent asserts that Sweeney had fair warning of his sentence and

denies that Sweeney's sentencing violated the *Ex Post Facto* Clause.

Article I, § 10 of the United States Constitution provides that no state shall pass

*ex post facto* laws.  The Constitution's bar against *ex post facto* laws, however, does not

apply to courts:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts.  Extending
> the Clause to courts through the rubric of due process . . . would circumvent the
> clear constitutional text.  It also would evince too little regard for the important
> institutional and contextual differences between legislating, on the one hand, and
> common law decisionmaking, on the other.

*Rogers v. Tennessee*, 532 U.S. 451, 460 (2001).

Although the *Ex Post Facto* Clause does not apply to courts, "limitations on *ex

post facto* judicial decision making are inherent in the notion of due process."  *Id.* at 456.

In particular, the Supreme Court has found that courts may not unexpectedly and

indefensibly construe a criminal statute so as to criminalize conduct which had not been

criminal prior to the court's new construction.  *See Bouie v. City of Columbia*, 378 U.S.

347 (1964).  The Supreme Court has explicitly declined, however, to apply all the

protections of the *Ex Post Facto* Clause to courts by way of the Due Process Clause.

*Id.* at 458-461.

In the present case, Sweeney argues that because the events specified in the

indictment occurred before the decision in *Foster*, applying *Foster's* judicially-

reconstructed sentencing statute in sentencing Sweeney violated his right to be free

from *ex post facto* laws.  Sweeney cites *Rogers*, 532 U.S. at 458, in support of the

-34-

proposition that, "[a]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law."  *Quoting Bouie*, 378 U.S. at 353.

Sweeney's argument is not well-taken for three reasons.  First, the judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*.  In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained.  The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.  Upon appeal, the South Carolina Supreme Court reinterpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the Due Process Clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect."  *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* differs considerably from *Bouie*.  *Foster* did not criminalize any conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty that could be handed down for a crime.  Rather, *Foster* excised those portions

of Ohio's sentencing statute that required judicial findings of fact before a court could

sentence a defendant to more than a minimum sentence or to consecutive sentences.

*Bouie* does not prohibit this.

Second, Sweeney's position is foreclosed in part by *Dobbert v. Florida*, 432 U.S.

282 (1977).  Sweeney contends that Ohio may not sentence him pursuant to a statute

that it modified after Sweeney's criminal conduct because this fails to give him fair

warning of his potential punishment.  As the Eleventh Circuit first pointed out in *United*

*States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* contradicts this proposition:

> Whether or not the old statute would in the future, withstand constitutional attack,
> it clearly indicated Florida's view of the severity of murder and of the degree of
> punishment which the legislature wished to impose upon murderers.  The statute
> was intended to provide maximum deterrence, and its existence on the statute
> books provided fair warning as to the degree of culpability to which the State
> ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08.  Similarly, although Ohio's sentencing statutes at the time

of Sweeney's criminal acts were unconstitutional, they nevertheless gave him fair notice

of the acts that were prohibited and the degree of punishment which the Ohio legislature

wished to impose on those who committed those acts.  As the reinterpreted statute did

not increase the maximum penalty to which Sweeney was potentially subject, Sweeney

cannot say that the state failed to give fair warning of what was prohibited or of the

potential penalties to which he would be subject if he committed those acts.  See *United*

*States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*,

430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st

Cir. 2005).

Third, Sweeney's position is contradicted by *United States v. Booker*, 543 U.S.

-36-

220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence. The Court found that such mandatory fact-finding violated the holding in *Apprendi*, and excised those portions of the statute requiring judicial fact-finding before increasing a base sentence.  The Supreme Court also allowed sentencing courts to engage in fact-finding in determining sentences by using the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding – striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality.  *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial fact-finding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d

-37-

at 498.  Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.  *Id.*  Ohio's post-*Foster* sentencing statutes require no judicial fact-finding whatsoever before a court may sentence a defendant to any sentence within the appropriate sentencing range or sentence a defendant to serve multiple sentences consecutively.

A number of federal defendants have alleged that the federal sentencing statutes reshaped by *Booker* violate due process because they subject defendants to *ex post facto* laws.  Those challenges have been universally rejected.  *See United States v. Scroggins*, 411 F.3d 572, 575-78 (5th Cir. 2005); *United States v. Jamison*, 416 F.3d 538, 539 (7th Cir. 2005); *United States v. Dupas*, 417 F.3d 1064, 1068-69 (9th Cir. 2005); *United States v. Rines*, 419 F.3d 1104, 1106 (10th Cir. 2006); *Duncan*, 400 F.3d at 1306-08; and *Alston-Graves*, 435 F.3d at 343.  Sweeney makes no argument that distinguishes in any relevant respect Ohio's revised sentencing statutes from the revised federal sentencing statutes upheld by the appellate courts.

For the foregoing reasons, Sweeney's appellate counsel was not deficient and did not prejudice the defense because the claims that Sweeney expected his counsel to make are without merit.  Sweeney's fifth ground for relief should be denied as being without merit.

-38-

IV.

For the reasons given above, Sweeney's second ground for relief should be dismissed as beyond the subject matter jurisdiction of this court, Sweeney's third and fourth grounds for relief should be dismissed as procedurally defaulted, or in the alternative, dismissed as without merit, and Sweeney's first and fifth grounds for relief should be dismissed as without merit.

Date:  September 12, 2010                    */s/ Nancy A. Vecchiarelli*
                                               United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985) reh'g denied, 474 U.S. 1111 (1986).**